UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LARRY POPEJOY,             )
                              )
         Plaintiff      )
                              )
     v.                )      CASE NO. 3:05-CV-694RM
                              )
CASS COUNTY COMMISSIONERS  ]
and CASS COUNTY HIGHWAY  ]
DEPARTMENT,            ]
                              )
        Defendant    )

## OPINION and ORDER

This cause is before the court on the motion of the Cass County Highway Department and the Cass County Commissioners for summary judgment on Larry Popejoy's claims against them. Mr. Popejoy claims that while he was employed by the Cass County Highway Department, he was treated in a discriminatory manner and not reasonably accommodated in relation to his sleep apnea condition (Count I) in violation of 42 U.S.C. § 12101 *et seq* of the Americans with Disabilities Act ("ADA"). Mr. Popejoy also claims that he was terminated in retaliation for reporting the alleged discrimination (Count II).[1] For the reasons that follow, the court grants Cass County's summary judgment motion, and denies as moot the parties' agreed motion to continue the trial date and strike related deadlines.

## I. FACTUAL BACKGROUND

---

[1]In his response in opposition to the defendants' summary judgment motion, Mr. Popejoy abandoned his claims under Count III of the complaint for violation of his rights under the Family and Medical Leave Act ("FMLA"). Mr. Popejoy also conceded that the Cass County Commissioners are not his employer for purposes of the ADA and, therefore, pursues his claims against the Cass County Highway Department only.

The following facts are taken from the summary judgment record and are viewed in the light most favorable to Mr. Popejoy, the nonmoving party. Mr. Popejoy began working for the Cass County Highway Department in 1985 as a night watchman and truck repairman. After serving in this capacity for a year and a half, Mr. Popejoy became a truck driver. In approximately 1995, Mr. Popejoy assumed the position of "maintainer," requiring him to oversee the highways within his Cass County township. As a maintainer, Mr. Popejoy called his supervisors to obtain job assignments for the day, which included dragging roads, cutting brush, filling patch, plowing snow, and generally taking care of the highways. Cass County also required each of its maintainers to obtain a commercial drivers license ("CDL") to perform job duties related to operating commercial vehicles. As the maintainer for Jefferson Township, Mr. Popejoy's supervisors included Superintendent Dave Strahlem as well as Ron Reeser and Pat Brown.

In the late 1980s or early 1990s, Mr. Popejoy first learned that he suffered from a sleep apnea condition. Mr. Popejoy testified that his condition caused him to wake up three to five times per night and to stop breathing 78 times per night. Mr. Popejoy also reported suffering from mood swings, trouble sleeping, and difficulty thinking and concentrating. On one occasion, Mr. Popejoy's condition caused him to crash his vehicle into a snow bank. Mr. Popejoy worked as a Cass County truck driver at the time he was diagnosed with sleep apnea and continued to perform his duties without any problem. After his initial diagnosis, Mr. Popejoy

2

began taking medication and using a CPAP machine, which alleviated some of his symptoms and caused him to feel less tired.

Mr. Popejoy first requested an accommodation for his sleep apnea in December 1997 by asking Cass County to relieve him from driving a dump truck. Mr. Popejoy submitted a note from Dr. Michael Lykens detailing Mr. Popejoy's sleep apnea condition. The note stated that Dr. Lykens "prefer[ed] that [Mr. Popejoy] not work at a job that he views as monotonous due to his potential hypersomnolence." Dr. Lykens didn't expressly prohibit Mr. Popejoy from driving a particular type of vehicle and, instead, recommended that Mr. Popejoy continue "in his present capacity driving predominately tractor in Cass County." Dr. Lykens explained that Mr. Popejoy's condition could gradually improve with continued weight loss and treatment, at which time "his ability to expand his driving responsibilities could ensue." After receiving Dr. Lykens' note, Cass County did not request that Mr. Popejoy drive a dump truck from 1998 to 2004.

Mr. Popejoy claims that Cass County accommodated his sleep apnea condition until June 2004, when it began ordering Mr. Popejoy to drive a dump truck in connection with a hot-mixing project. Mr. Popejoy maintains that Cass County ordered him to drive a dump truck on seven occasions between June 14 and August 6. Cass County explains that it was short on personnel at the time, and it ordered all of its maintainers to drive dump trucks. Mr. Popejoy, on the other hand, claims that Cass County, and specifically Mr. Strahlem, were aware of his sleep apnea condition and deliberately forced him to exhaust his leave on

3

the days that he was ordered to drive a dump truck. On June 14, for example, Pat Brown asked Mr. Popejoy to drive a dump truck, and Mr. Popejoy notified Mr. Brown that he was restricted from this activity because of his sleep apnea. Mr. Brown referred Mr. Popejoy's call to Mr. Strahlem, who told Mr. Popejoy that he should work out of the shop if he felt unsafe operating a vehicle. Mr. Popejoy told Mr. Strahlem that he would have his doctor write another note spelling out his restrictions.

After their June 14 conversation, Mr. Popejoy submitted another doctor's note to Mr. Strahlem recommending that Mr. Popejoy "continue driving tractor, cutting grass etc. as it is not monotonous as to prevent day time somnolence related to his sleep apnea syndrome." This note, authored by Dr. Vizcarra, didn't expressly indicate that Mr. Popejoy was precluded from driving a dump truck. In July 2004, Dr. Vizcarra prepared a medical examination report for Mr. Popejoy's commercial driver fitness determination which concluded that Mr. Popejoy met the standards for his CDL. This medical report, along with the two prior reports prepared in 1998 and 2000[2], didn't indicate any limitations on Mr. Popejoy's ability to drive. Dr. Vizcarra later submitted information in connection with the CDL application which stated that Mr. Popejoy was getting adequate sleep, his sleep disorder was satisfactorily controlled, and his sleep apnea wasn't adversely affecting his ability to operate a commercial motor vehicle.

---

[2]Dr. Vizcarra's 1998 and 2000 physical examinations did not contain any documentation of Mr. Popejoy's sleep apnea condition.

On July 13, Ron Reeser told Mr. Popejoy to drive a dump truck, and Mr. Popejoy again spoke with Mr. Strahlem about his sleep apnea condition. Mr. Strahlem told Mr. Popejoy that Dr. Vizcarra's note was only a recommendation and that if Mr. Popejoy was qualified for his CDL, then he should be able to drive a dump truck. Mr. Popejoy also claims that Mr. Strahlem told him that "[i]f everybody did what you did, Larry, we wouldn't have anybody doing anything" and that if Mr. Popejoy kept refusing to drive a dump truck, Cass County would probably have to let him go. Mr. Popejoy maintains that, in addition to Mr. Strahlem, both Mr. Reeser and Mr. Brown continually made comments regarding his sleep apnea and resulting inability to drive a dump truck.

Mr. Popejoy contends he was forced to take sick leave and vacation days whenever he was ordered to drive a dump truck. Mr. Popejoy already had used eleven vacation days and five sick days for the year before any of Cass County's requests, so he eventually exhausted all of his leave. Accordingly, Mr. Strahlem gave Mr. Popejoy a verbal warning for his repeated absences. On August 2, Mr. Strahlem suspended Mr. Popejoy for insubordination and absenteeism after he used up his remaining leave. In response, Mr. Popejoy's counsel sent a letter to Mr. Strahlem on August 26 complaining of harassment and demanding an accommodation for the sleep apnea condition under the ADA. On October 5, Mr. Popejoy called in sick again, and Mr. Strahlem terminated him the next day pursuant to Cass County's disciplinary policy. Mr. Popejoy has held several jobs since his termination, including driving a 40-foot tractor trailer containing liquid

5

waste from Indiana to New Mexico.


## II. DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). A nonmoving party cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). Specifically, the nonmoving party must point to enough evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-323 (1986); Lawrence v. Kenosha Cty., 391 F.3d 837, 842 (7th Cir. 2004).


*(A) Count I - ADA*

6

The ADA prohibits employers from discriminating against a qualified individual with a disability because of that disability. 42 U.S.C. § 12112(a). Discrimination under the ADA includes both disparate treatment based on disability as well as "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ." 42 U.S.C. § 12112(b)(5)(A); *see also* <u>Timmons v. General Motors Corp.</u>, 469 F.3d 1122, 1125 (7th Cir. 2006). Mr. Popejoy alleges both types of discrimination, claiming that Cass County took adverse employment actions against him and failed to reasonably accommodate his sleep apnea condition by requesting that he drive a dump truck.

### (i) Disparate treatment

A plaintiff may prove discrimination in violation of the ADA using either the direct or indirect method of proof. <u>Id.</u> at 1126. Under the direct method, Mr. Popejoy must establish a casual connection between his alleged disability and Cass County's adverse actions. *See* <u>Sylvester v. SOS Children's Vills. Ill., Inc.</u>, 453 F.3d 900, 902-903 (7th Cir. 2006). Mr. Popejoy attempts to proceed under the direct method in this case by pointing to circumstantial evidence that his supervisors continually made comments and threats regarding his sleep apnea and inability to drive a dump truck. These comments alone do not show that Cass County was treating Mr. Popejoy differently because of his alleged disability or that Cass County wouldn't have asked Mr. Popejoy to drive a dump truck but for his sleep apnea. As such, Mr. Popejoy must proceed under the indirect method of

7

proof. *See* <u>Troupe v. May Dep't Stores Co.</u>, 20 F.3d 734, 736 (7th Cir. 1994) (holding that the direct method essentially requires an admission by the decisionmaker that the adverse employment action was based on the prohibited animus).

Under the indirect method, Mr. Popejoy must first make out a prima facie case of discrimination. <u>Lawson v. CSX Transp., Inc.</u>, 245 F.3d 916, 922 (7th Cir. 2001). He must show that: 1) he is disabled within the meaning of the ADA; 2) he is qualified to perform the essential functions of his job with or without a reasonable accommodation; 3) he was subject to an adverse employment action; and 4) similarly situated employees received more favorable treatment. <u>Rooney v. Koch Air, LLC</u>, 410 F.3d 376, 380-381 (7th Cir. 2005). If he makes such a showing, the burden shifts to Cass County to articulate a legitimate nondiscriminatory reason for its actions. <u>Id.</u> If Cass County makes this showing, the burden shifts again to Mr. Popejoy to show that Cass County's stated reason is a pretext for discrimination. <u>Id.</u>

*(a) Disability*

Before proceeding with either a disparate treatment or reasonable accommodation claim, Mr. Popejoy must first show that he is a "qualified individual with a disability" for the ADA to apply. *See* <u>Cassimy v. Bd. of Educ. of Rockford Pub. Schs., Dist. No. 205</u>, 461 F.3d 932, 935-936 (7th Cir. 2006) (holding that if the plaintiff cannot prove that he is disabled for purposes of the ADA then "neither his discrimination claim nor his failure to accommodate claim

8

can proceed, as this is the first element of both claims."). The ADA defines a qualified individual as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); Rooney v. Koch Air, LLC, 410 F.3d at 380.

Mr. Popejoy may prove that he is disabled within the meaning of the ADA in any of three ways: 1) he has a physical or mental impairment that substantially limits one or more major life activities; 2) he has a record of such an impairment; or 3) his employer regarded him as having such an impairment. 42 U.S.C. § 12102(2)(A)-(C); *see* Sutton v. United Air Lines, 527 U.S. 471, 478 (1999); Schneiker v. Fortis Ins. Co., 200 F.3d 1055, 1058-1060 (7th Cir. 2000) (noting that the plaintiff has the burden of proving that he is disabled). Not every physical impairment or condition qualifies as a disability. Dalton v. Subaru-Isuzu Auto., 141 F.3d 667, 675 (7th Cir. 1998). To be covered by the ADA, the impairment must prevent or severely restrict the plaintiff from performing one or more major life activities. Bragdon v. Abbott, 524 U.S. 624, 642 (1998).

A physical impairment is defined as any physiological disorder, cosmetic disfigurement, or anatomical loss affecting one of the body's systems. *See* Krocka v. City of Chicago, 203 F.3d 507, 513 (7th Cir. 2000). A major life activity is an activity of "central importance to daily life," including functions such as caring for oneself, performing manual tasks, seeing, hearing, speaking, breathing, learning, and working. Toyota Motor Mfg. of Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002).

9

To be substantially limited in performing one of these activities, Mr. Popejoy must show that he is unable to perform or significantly restricted as to the condition, manner, or duration under which he can perform the activity as compared to an average person in the general population. Krocka v. City of Chicago, 203 F.3d at 513; *see also* 29 C.F.R. §1630.2(j) (2007). The court may consider factors such as the nature and severity of the impairment, the duration of the impairment, and the permanent or long-term impact of the impairment. *See* Kampmier v. Emeritus Corp., 472 F.3d 930, 937 (7th Cir 2007); *see also* 29 C.F.R. § 1630.2(j)(2)(i)-(iii) (2007).

Mr. Popejoy claims he is disabled because his sleep apnea condition constitutes a physical impairment that substantially limits his major life activities of sleeping and breathing. The parties don't dispute that Mr. Popejoy suffers from a physical impairment, so the relevant question is whether Mr. Popejoy's medical condition substantially limits one of his major life activities. In making this determination, the court must undertake an individualized assessment of the effect of Mr. Popejoy's sleep apnea condition on his daily activities. *See* Toyota Motor Mfg v. Williams, 534 U.S. at 196 ("It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment"); *see also* Burnett v. LFW Inc., 472 F.3d 471, 483 (7th Cir. 2006) (noting that the determination of whether a plaintiff has a disability is not necessarily based on the name of the condition or a particular diagnosis but rather on the effect of the impairment on the life of the plaintiff). For

10

his claim to survive summary judgment, Mr. Popejoy must provide specific facts regarding the effects of his sleep apnea; conclusory allegations do not suffice. *See* Scheerer v. Potter, 443 F.3d 916, 919 (7th Cir. 2006).

Viewing the record in the light most favorable to Mr. Popejoy, there is insufficient evidence to create a material issue of fact that Mr. Popejoy's sleep apnea is so severe that it qualifies as a disability under the ADA. Disrupted, intermittent sleep difficulties are not the type of sleep problems that amount to a substantial limitation; instead, Mr. Popejoy must show that his sleep apnea is "prolonged, severe, and long-term." Burks v. Wisconsin Dep't of Transp., 464 F.3d 744, 757 (7th Cir. 2006). Sleep apnea is a physical impairment that may substantially limit the major life activity of sleeping, but the condition varies in severity "from very mild asymptomatic snoring to severe snoring and extremely restless sleep with extreme daytime hypersomnolence or excessive sleepiness during the day." Kolecyck-Yap v. MCI Worldcom, Inc., 2001 WL 245531, at *9-10 (N.D. Ill. Mar. 12, 2001) (citing Mont-Ros v. City of West Miami, 111 F. Supp. 2d 1338, 1355 (S.D. Fla. 2000)); *see also* Silk v. City of Chicago, 1997 WL 790598, at * 7 (N.D. Ill. Dec. 17, 1997) (affirmed by Silk v. City of Chicago, 194 F.3d 788, 798-799 (7th Cir. 1999)). Whether a plaintiff's sleep apnea is severe enough to rise to the level of a disability within the meaning of the ADA requires an individual determination based on particularized evidence of the plaintiff's medical condition. In Silk v. City of Chicago, for example, the plaintiff produced evidence of his oxygen saturation levels, hypertension levels, increased risk of stroke, blood

11

pressure levels, and how many hours he slept during the night due to his severe positional sleep apnea. Id. at *7. Based on this evidence, the court found that the plaintiff was substantially limited in the major life activity of sleeping. Id.

Mr. Popejoy contends that his sleep apnea condition affects his daily activities by causing mood swings, trouble sleeping, and difficulty thinking and concentrating. Mr. Popejoy also presented evidence that his condition originally caused him to awaken three to five times per night and stop breathing 78 times per night. Unlike the plaintiff in Silk v. City of Chicago, Mr. Popejoy hasn't produced facts that reveal oxygen saturation levels, hypertension levels, or increased risk of heart conditions and stroke. To the contrary, Mr. Popejoy testified that his condition has improved with the use of medication and the CPAP machine. Mr. Popejoy's doctors testified that his condition was not necessarily permanent but, rather, was treatable and correctable with weight loss. In addition, Mr. Popejoy doesn't regularly see a doctor for his condition. Although Dr. Newman acted as Mr. Popejoy's treating physician, his medical reports spanning 1998 through 2004 that don't mention sleep apnea. Similarly, Dr. Vizcarra's 1998 and 2000 medical reports in connection with Mr. Popejoy's CDL determination don't mention sleep disorders or establish that Mr. Popejoy couldn't perform the functions of his job. Further, Dr. Vizcarra's 2004 report noted that Mr. Popejoy's condition was satisfactorily controlled and that he was getting adequate sleep.

This case's facts, then, are more akin to decisions finding that sleep disturbances did not constitute a disability as defined by the ADA. See Bond v.

Sheahan, 152 F. Supp. 2d 1055, 1066 (N.D. Ill. 2001) (granting the defendant's motion for summary judgment because the plaintiff failed to produce medical evidence regarding the severity of her sleeping problems and how it affected her daily life); Kolecyck-Yap v. MCI Worldcom, 2001 WL 245531 at *10; Mont-Ros v. City of West Miami, 111 F. Supp. 2d at 1356-1357 (holding that the plaintiff's sleep apnea did not substantially limit a major life activity because his condition was both treatable and correctable despite evidence that he underwent a sleep study). For instance, the Kolecyck-Yap v. MCI Worldcom court held that even though the plaintiff underwent two surgical procedures related to her sleep apnea, she did not present the type of evidence necessary to quantify the severity of her condition. 2001 WL 245531 at *10 (distinguishing Silk v. City of Chicago, 1997 WL 790598 at *7). Similarly, Mr. Popejoy has presented no evidence regarding where his sleep apnea falls in the range of severity or demonstrated that his sleeping is more affected than an average person in the general population.

In sum, Mr. Popejoy hasn't come forth with sufficient evidence that his sleep apnea condition substantially limited one of his major life activities. As such, Mr. Popejoy cannot show that he is disabled within the meaning of the ADA, and so cannot succeed on his disparate treatment and failure to accommodate claims.

(b) *Similarly situated individuals*

Even if Mr. Popejoy could prove that he is disabled within the meaning of the ADA, he still must satisfy the other elements of the prima face test in order to establish a claim for disparate treatment. Analysis of whether Mr. Popejoy was

13

otherwise qualified for the position of maintainer (an issue the parties dispute) is unnecessary because Mr. Popejoy cannot fulfill the fourth prong of the prima facie test. Mr. Popejoy must point to a similarly situated individual who was not disabled and received more favorable treatment. *See* Kampmier v. Emeritus Corp., 472 F.3d at 938. To prove that an individual is similarly situated, Mr. Popejoy must show that another individual dealt with the same supervisor, was subject to the same standards, and engaged in similar conduct "without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-618 (7th Cir. 2000); *see also* Burks v. Wisconsin Dept. of Transp., 464 F.3d at 751. Mr. Popejoy proceeded solely under the direct method of proof with respect to his disability discrimination claims and didn't point to any similarly situated individuals. Cass County's work records and Mr. Strahlem's testimony both establish that all of the maintainers, including those without disabilities, were assigned to drive a dump truck on occasion. Likewise, Mr. Popejoy cannot point to another employee who was similarly absent but not disciplined. Accordingly, no reasonable trier of fact could find that Mr. Popejoy fulfilled the elements necessary for a prima facie case of disability discrimination.

*(c) Pretext*

Although Mr. Popejoy hasn't carried his initial evidentiary burden under the ADA, Cass County nonetheless gave legitimate nondiscriminatory reasons for asking Mr. Popejoy to drive a dump truck and for terminating him, and Mr.

14

Popejoy hasn't established that these reasons were pretext for discrimination: that Cass County singled him out because of his disability. Cass County asked all its maintainers to drive a dump truck in the spring of 2004 when it was understaffed in connection with a hot-mixing project. Mr. Popejoy hasn't produced sufficient evidence that Cass County's reason for asking him to drive a dump truck was dishonest or was actually an effort to have him terminated. *See* Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 684 (7th Cir. 2000) (holding that in order to show pretext, the plaintiff must show "something worse than a business error; pretext means deceit used to cover one's tracks."). Similarly, Cass County explained that it suspended and later terminated Mr. Popejoy for absenteeism and insubordination, and Mr. Popejoy hasn't shown that this explanation has no basis in fact or that he wouldn't have been fired but for his disability. As a result, Mr. Popejoy has not carried his burden on his disparate treatment claim, and Cass County is entitled to summary judgment.

*(ii) Failure to accommodate*

To establish a claim for discrimination based upon a failure to accommodate, Mr. Popejoy must show that: (1) he is a qualified individual with a disability; (2) Cass County was aware of his disability; and (3)Cass County failed to reasonably accommodate his disability. EEOC v. Sears, Roebock & Co., 417 F.3d 789, 797 (7th Cir. 2005). Mr. Popejoy claims Cass County knew of his sleep apnea condition and failed to accommodate him when it repeatedly asked him to drive a dump truck. Cass County, on the other hand, argues that Mr. Popejoy

15

failed to engage in the interactive process by not participating in any additional discussion regarding accommodation. As already discussed, Mr. Popejoy's accommodation claim must fail because he cannot produce sufficient evidence that he is a qualified individual with a disability within the meaning of the ADA. *See* Cassimy v. Bd. of Educ. of Rockford Pub. Schs., 461 F.3d at 935-936; *see also* Reberg v. Road Equip., 2005 WL 3320780, at *8 (N.D. Ind. Dec. 7, 2005) (holding that because the plaintiff failed to demonstrate that her sleep disorder constituted a disability under the ADA, her reasonable accommodation claim is "dead in the water."). Therefore, the court need go no further in the analysis. Cass County is entitled to summary judgment on all of Mr. Popejoy's ADA claims.


*(B) Count II - Retaliation*

Mr. Popejoy also claims that he was the victim of retaliation because he was terminated after his counsel sent a letter to Cass County invoking his rights under the ADA. 42 U.S.C. § 2000e provides that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice . . . ." Thus, not only does the ADA protect employees from discrimination based on disability, Title VII protects them from retaliation from complaining about that discrimination. Even if Mr. Popejoy was not disabled, Cass County would still violate the statute by retaliating against him for attempting to raise a good-faith claim under the ADA. Cassimy v. Bd. of Educ. of the Rockford Public Schs., 461

16

F.3d at 938. Mr. Popejoy may prove retaliation by using either a direct or indirect method of proof. *See* <u>Rogers v. City of Chicago</u>, 320 F.3d 748, 753 (7th Cir. 2003) (citing <u>Logan v. Kautex Textron N.A.</u>, 259 F.3d 635, 638-639 (7th Cir. 2002)).

### *(i) Direct method*

To establish a prima facie case of retaliation under the direct method, Mr. Popejoy must present sufficient evidence that (1) he engaged in a statutorily protected activity (i.e., complaining about prohibited conduct); (2) he suffered an adverse employment action; and (3) there is a causal link between his opposition to the unlawful employment practice and the adverse action. *See* <u>Tomanovich v. City of Indianapolis</u>, 457 F.3d 656, 662-663 (7th Cir. 2006); <u>Oest v. Ill. Dep't of Corr.</u>, 240 F.3d 605, 615-616 (7th Cir. 2001). "In order to demonstrate the causal link, [Mr. Popejoy] must demonstrate that [Cass County] would not have taken the adverse action 'but for' the protected expression." <u>Gleason v. Mesirow Fin., Inc.</u>, 118 F.3d 1134, 1146 (7th Cir. 1997).

Under the direct method of proof, there are two types of permissible evidence: direct evidence; i.e., "evidence that, if believed by the trier of fact, would prove the fact in question 'without reliance on inference or presumption'" and circumstantial evidence; "i.e., evidence that allows a jury to infer intentional discrimination by the decision-maker." <u>Rogers v. City of Chicago</u>, 320 F.3d at 753 (citing <u>Walker v. Glickman</u>, 241 F.3d 884, 888 (7th Cir.2001)). Direct evidence "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." <u>Rhodes v. Ill. Dep't Of Tranps.</u>, 359 F.3d 498,

17

504 (7th Cir. 2004); *see also* <u>Hoffman v. Caterpillar, Inc.</u>, 256 F.3d 568, 576 (7th Cir. 2001) (noting that admissions of discriminatory intent are rarely encountered). Mr. Popejoy cannot prove his claim using direct evidence because he cannot show that Cass County admittedly terminated him because of his sleep apnea condition or because he invoked his rights under the ADA.

Even without direct evidence, Mr. Popejoy still may proceed under the direct method if he presents a "convincing mosaic" of circumstantial evidence. *See* <u>Troupe v. May Dep't Stores Co.</u>, 20 F.3d at737; *see also* <u>Adams v. Wal-Mart Stores, Inc.</u>, 324 F.3d 935, 939 (7th Cir. 2003) (holding that a plaintiff may prevail under the direct method with circumstantial evidence alone, but that evidence must "point directly to a discriminatory reason for the employer's action."). Mr. Popejoy argues that he has established a prima facie case of retaliation based on various types of circumstantial evidence, including suspicious timing, evidence that similarly situated employees were treated better than him, and Cass County's reason for his termination was a pretext for discrimination.

Mr. Popejoy contends that his 19-year tenure with Cass County, followed by firing five weeks after he invoked his rights under the ADA, creates an inference of discrimination. Suspicious timing alone, however, does not create a genuine issue as to casual connection. <u>Wyninger v. New Venture Gear, Inc.</u>, 361 F.3d 965, 981 (7th Cir. 2004) (Although "[t]here is no bright-line rule as to the amount of evidence necessary to survive summary judgment under the direct method, . . . it is clear that 'mere temporal proximity' is not enough to establish a genuine

issue of material fact.") (citing <u>Stone v. City of Indianapolis Pub. Util. Div.</u>, 281 F.3d 640, 644 (7th Cir. 2002)). Mr. Popejoy tries to bolster his retaliation claim by pointing to evidence that Cass County gave preferential treatment to another maintainer, Max Long, who was allowed to work in the shop after having his license suspended for receiving a DUI. Although Mr. Long held the same position as Mr. Popejoy and reported to the same supervisors, he is not similarly situated in all relevant aspects. <u>Radue v. Kimberly-Clark Corp.</u>, 219 F.3d at 617-618 (holding that "in disciplinary cases - in which a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason - a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct."). Mr. Long wasn't qualified to drive a dump truck with a suspended license, while Mr. Popejoy held a valid CDL. Moreover, there is no evidence that Mr. Long had similar performance issues regarding absenteeism or insubordination. These differences distinguish Mr. Long's conduct and Cass County's treatment of him.

Mr. Popejoy also argues that Cass County's failure to follow its progressive disciplinary policy when it terminated him is circumstantial evidence of discrimination. Cass County's policy states that excessive absenteeism is a Group II offense, providing for a three day suspension for a first offense, a ten day suspension for a second offense, and discharge upon a third offense. Mr. Popejoy claims that Cass County skipped the second step of progressive discipline by terminating Mr. Popejoy after only a verbal warning and a three day suspension.

19

Insubordination, on the other hand, is a Group III offense and is cause for immediate termination, so there is no evidence that Mr. Popejoy's termination for both insubordination and absenteeism violated Cass County's disciplinary policy. Further, to prove pretext, Mr. Popejoy must demonstrate that Cass County gave a dishonest explanation for its actions, and Mr. Popejoy has produced no evidence that Cass County's decision to terminate him was a lie or had no basis in fact. *See* Grube v. Lau Indust., Inc., 257 F.3d 723, 730 (7th Cir. 2001) (pretext "means something worse than a business error; pretext means deceit used to cover one's tracks.").

Looking at the totality of the circumstances, Mr. Popejoy's presentation of circumstantial evidence does not establish a reasonable inference of causation. No reasonable trier of fact could find, based on the summary judgment record, that Cass County would not have fired Mr. Popejoy but for his complaints under the ADA. In fact, Cass County asserts that it would have fired Mr. Popejoy regardless of his complaints because of his absenteeism and insubordination. Accordingly, Mr. Popejoy has not satisfied his burden under the direct method of proof.

*(ii) Indirect method*

Although Mr. Popejoy cannot prevail under the direct method of proof, he may establish a prima facie case of retaliation under the indirect method by demonstrating that: (1) he was engaged in a statutorily-protected activity; (2) he performed his job according to Cass County's legitimate expectations; (3) he

20

suffered an adverse employment action; and (4) only he, and not any similarly situated employee who did not complain, was subjected to an adverse employment action. *See* Griffin v. Porter, 356 F.3d 824, 828 (7th Cir. 2004); s*ee also* Stone v. City of Indianapolis, 281 F.3d at 644. Unlike the direct method of proof, Mr. Popejoy need not "show even an attenuated causal link" to establish a prima facie case under the indirect method. Id. If Mr. Popejoy is successful in establishing a prima facie case, the burden of proof shifts to Cass County to articulate a legitimate, nondiscriminatory reason for terminating Mr. Popejoy. Id. In turn, Ms. Popejoy must prove that Cass County's proffered reason is a pretext for discrimination. Id.

Cass County doesn't dispute that Mr. Popejoy's invocation of his rights under the ADA was a statutorily protected activity or that his termination was an adverse employment action. Thus, in determining whether Mr. Popejoy established a prima facie case, the court need only focus on whether Mr. Popejoy was performing up to Cass County's legitimate expectations and whether he can point to any similarly-situated employees who were treated more favorably. As to the performance prong, Cass County claims that Mr. Popejoy's excessive absences and refusal to drive a dump truck rendered him unable to perform the essential functions of the maintainer position. The performance analysis is unnecessary here because Mr. Popejoy claims that his absences and insubordination were in response to Cass County singling him out due to his sleep apnea condition. Curry v. Menard, Inc., 270 F.3d 473, 477-478 (7th Cir. 2001) (citing Oest v. Ill. Dept. of

21

Corr., 240 F.3d at 612 n.3 (the "legitimate expectations prong of the prima facie test is not necessary to the analysis, where the people judging the plaintiff's performance were the same people she accused of discriminating against her.")).

Assuming for purposes of this issue that Mr. Popejoy could establish the first three elements of the prima facie test, he must point to a similarly situated employee who was not a member of his protected class and received more favorable treatment. See Radue v. Kimberly-Clark Corp., 219 F.3d at 617. A similarly situated employee must be "directly comparable in all material respects." Grayson v. O'Neill, 308 F.3d 808, 819 (7th Cir. 2002); Peele v. Country Mut. Ins. Co., 288 F.3d 319, 330 (7th Cir. 2002). Mr. Popejoy cites only to the fact that Max Long was allowed to work in the shop when his license was suspended as evidence that other employees were treated better than he was. As already discussed, Mr. Long is too dissimilar to Mr. Popejoy to allow an inference of discrimination. Mr. Popejoy has not presented a prima facie case of retaliation under the indirect method. See Kriescher v. Fox Hills Resort and Conference Ctr., FHR, Inc., 384 F.3d 912, 916 (7th Cir. 2004) (holding that the plaintiff could not out a prima facie case of retaliation without identifying a similarly situated employee).

Regardless of Mr. Popejoy's ability to establish a prima facie case, Cass County presented a legitimate nondiscriminatory reason for suspending and terminating Mr. Popejoy, and Mr. Popejoy has not produced evidence sufficient to establish that this reason was a pretext for discrimination. To show pretext, Mr. Popejoy must demonstrate that Cass County gave a dishonest explanation for its

actions. *See* Grube v. Lau Indust., Inc., 257 F.3d 723, 730 (7th Cir. 2001) (pretext "means something worse than a business error; pretext means deceit used to cover one's tracks."). If Cass County acted in good faith, the court cannot second-guess its actions regardless of whether Cass County was correct in its beliefs. Green v. Nat'l Steel Corp., 197 F.3d 894, 899 (7th Cir. 1999); Debs v. Northeastern Ill. Univ., 153 F.3d 390, 396 (7th Cir. 1998) (even a foolish, trivial, or even baseless decision, if honestly believed by the employer, is not pretextual). Courts cannot impose on employers their own ideas of what constitutes a prudent business decision; they "can assess only the question [of] whether an employer has taken an action for a forbidden reason." Leonberger v. Martin Marietta Materials, Inc., 231 F.3d 396, 399 (7th Cir. 2000).

As already explained, Mr. Popejoy hasn't produced sufficient evidence that Cass County's proffered reason for terminating him was a lie or had no basis in fact. *See* Mills v. Health Care Serv. Corp., 171 F.3d 450, 458 (7th Cir. 1999). Cass County is entitled to summary judgment on Mr. Popejoy's retaliation claim.


III. Conclusion

For the foregoing reasons, the court GRANTS the defendants' motion for summary judgment. [Doc. No. 31] and DENIES the parties' agreed motion to continue trial date and strike related deadlines [Doc. No. 38]as MOOT. The clerk shall enter judgment accordingly.

SO ORDERED.

ENTERED: January 17, 2008

                            /s/ Robert L. Miller, Jr.
                            Chief Judge
                            United States District Court